THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DORIS ANN MCNAIR, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* LARRY C. MOSELY, Respondent.

Fourth Department, January 16, 1975.

*Peter L. Yellin* (*Robert S. Beer* of counsel), for Doris Ann McNair, appellant.

*Jack B. Lazarus, District Attorney* (*Melvin Bressler* of counsel), for the People, respondent.

*Jack B. Lazarus, District Attorney* (*Melvin Bressler* of counsel), for the People, appellant.

*Peter L. Yellin* (*Leslie Bradshaw* of counsel), for Larry C. Mosely, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Peter J. Dooley* and *Ruth Kessler Toch* of counsel), in his statutory capacity under section 71 of the Executive Law.

*New York Civil Liberties Union* (*Kenneth P. Norwick* and *David W. Beier, III*), amicus curiae.

CARDAMONE, J. We are called upon to determine in these two appeals, which have been consolidated for this purpose, whether sentencing provisions of the Penal Law which mandate life sentences in cases of certain drug related convictions are unconstitutional as violating the Eighth Amendment of the United States Constitution and section 5 of article I of the New York State Constitution as constituting cruel and unusual punishment.

### FACTS

In *Mosely,* the People appeal pursuant to CPL 450.20 (subd. 4) from a judgment (insofar as it imposed sentence) of the Monroe County Court which declared unconstitutional section 70.00 (subd. 2, par. [a]) and section 70.00 (subd. 3, par. [a], cl. [iii]) and the last sentence of section 220.39 of the Penal Law, as amended in 1973. Defendant Larry C. Mosely was charged with criminal sale of a dangerous drug in the third degree under former sections 220.35 and 70.00 of the Penal Law by the Monroe County Grand Jury on November 16, 1973. On February 8, 1974, defendant was further charged by the Grand Jury with criminal sale of a controlled substance in the third degree under subdivision 1 of section 220.39 of the Penal Law. On July 19, 1974 defendant pled guilty to the latter indictment under the amended Penal Law in satisfaction of all charges. According to an information signed by the District Attorney, defendant had a prior record of conviction of the felony of grand larceny in 1970. The trial court sentenced defendant Mosely,

upon his plea of guilty to the charge of criminal sale of a controlled substance, third degree to a term of from three to six years' imprisonment under the law in effect prior to its amendment in 1973.

In *McNair*, defendant Doris A. McNair appeals from a judgment of the Monroe County Court entered April 22, 1974, convicting defendant, following a jury trial, of criminal possession of a controlled substance, second degree, criminal use of drug paraphernalia (2 counts) and criminal possession of a hypodermic instrument. Criminal possession of a controlled substance in the second degree is a class A–II felony (Penal Law, § 220.18) and is punishable by a mandatory maximum term of imprisonment for life (Penal Law, § 70.00, subd. 2, par. [a]) and a mandatory minimum of not less than six years nor more than eight and one-third years (Penal Law, § 70.00, subd. 3, par. [a], cl. [ii]). Defendant was sentenced by Monroe County Court to concurrent terms of six years to life at Bedford Hills State Correctional Facility on the felony count and one year each on the other convictions.

## LEGAL TESTS APPLICABLE

Historically, our system of government has recognized the function of the legislative branch to define crimes and prescribe punishments and that such questions are in the first instance for the judgment of the Legislature alone (see *Matter of Lynch*, 8 Cal. 3d 410). The courts declare an act of the Legislature unconstitutional only when the unconstitutionality of the statute is " clear " (*Garcia* v. *Pan Amer. Airways*, 183 Misc. 258, affd. 269 App. Div. 287, affd. 295 N. Y. 852, cert. den. 329 U. S. 741) and "without doubt " (*People* v *Crane*, 214 N. Y. 154, 173, affd. 239 U. S. 195), since courts ordinarily have no power to substitute their opinions for the judgment of the Legislature (*Williams* v. *Mayor*, 289 U. S. 36, 46). A legislative enactment carries a strong presumption of constitutionality (*Wasmuth* v. *Allen*, 14 N Y 2d 391, 397; *Defiance Milk Prods. Co.* v. *Du Mond*, 309 N. Y. 537, 540–541; *Matter of Watson*, 226 N. Y. 384, 404), including in it the presumption that the Legislature has found facts sufficient to support its enactment (*I. L. F. Y. Co.* v. *Temporary State Housing Rent Comm.*, 10 N Y 2d 263, 269). Moreover, " it is a firmly established principle, and one which has become cardinal and elementary in the field of constitutional law, that the propriety, wisdom, necessity, adequacy, efficacy, utility, desirablility, and expediency of legislation are not matters which are to be considered by the courts "

(8 N. Y. Jur., Constitutional Law, § 72, pp. 599–602, and cases therein cited). The reason for this principle and the strong presumption of constitutionality is that the public interest requires, under ordinary circumstances, that legislative enactments be given recognition and enforced by the courts as embodying the will of the People (*Zorach* v. *Clauson*, 303 N. Y. 161, 172, affd. 343 U. S. 306). The burden of proving these provisions of the amended Penal Law unconstitutional is on the defendants (*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 79; *Matter of Fay*, 291 N. Y. 198, 206; *People* v. *Pagnotta*, 25 N Y 2d 333, 337) and, if the proof with respect to this issue is not clear, but only doubtful, courts will not declare a statute unconstitutional (*People* v. *Crane*, 214 N. Y. 154, affd. 239 U. S. 195, *supra*).

THE STATUTES

The drug problem, as it exists today in New York State, needs no citation of authority to establish its pervasive existence. Narcotics addiction, particularly heroin addiction, is undoubtedly one of the most serious social evils confronting American society today.[1] The legislative response to this problem was the enactment of chapters 276 to 278 of the Laws of 1973. These laws, under attack on this appeal, reclassified class A felonies which subject a convicted defendant to an indeterminate sentence with a mandatory maximum term of life imprisonment, and with various mandatory minimum terms for the subclasses A-I, A-II and A-III, down to a minimum of one year (Penal Law, § 70.00, subd. 2, par. [a] and § 70.00, subd. 3, par. [a], cl. [iii]).

Other sections of the statute are the probation requirements (Penal Law, § 65.00, subd. 1, par. [b]; subd. 3, par. [a], cl. [ii]), lifetime parole (Penal Law, § 70.40, subd. 1), restriction on civil commitment (Mental Hygiene Law, § 81.25, subd. [b], par. 3), prohibition of youthful offender treatment (CPL 720.10, subd. 2), and limitation on plea bargaining (CPL 220.10, subd. 6, par. [a]).

CONSIDERATION OF THE MERITS

The defendants primarily assert that section 220.39 of the Penal Law is unconstitutional as violative of the Eighth Amend-

---

1. Estimates of the total number of narcotic addicts in the United States vary greatly. In 1971 the National Institute of Mental Health, based on a wide range of data, estimated the addict population in the United States at between 250,000 and 315,000. It is generally conceded that well over half of this population is based in New York City (Licit and Illicit Drugs, by Brecker and the Editors of Consumer Reports — [Little, Brown & Co., Boston, 1972, p. 72]).

ment ban on cruel and unusual punishment in that the sentence prescribed is disproportionate to the offense. In its earliest years the United States Supreme Court adopted an "historical" interpretation of the Cruel and Unusual Punishments Clause. In *Matter of Kemmler* (136 U. S. 436, 446) the court declared that "if the punishment prescribed for an offense against the laws of the State were manifestly cruel and unusual, as burning at the stake, crucifixion, breaking on the wheel, or the like, it would be the duty of the courts to adjudge such penalties to be within the constitutional prohibition." However, as several of the Justices noted, the "looking backwards" approach was decisively repudiated in *Weems* v. *United States* (217 U. S. 349). Were it not, and had the "historical" interpretation of the clause prevailed, the "cruel and unusual punishments" prohibition would have been effectively read out of the Bill of Rights (*Furman* v. *Georgia,* 408 U. S. 238, 265 [BRENNAN, J., concurring]). The Eighth Amendment proscription against "cruel and unusual punishments" is applicable to the States through the Fourteenth Amendment. (See *Robinson* v. *California,* 370 U. S. 660; see, also, *People* v. *Davis,* 33 N Y 2d 221.)

The Cruel and Unusual Punishments Clause like other great provisions of the Constitution is not susceptible to precise definition (*Trop* v. *Dulles,* 356 U. S. 86, 99). Recently, the United States Supreme Court was called upon to test the ultimate form of punishment, the taking of a human life, against the prohibition of that clause (*Furman* v. *Georgia, supra*). A review of the concurring opinions by the several members of the majority of the Supreme Court in *Furman* reveals the following four generalized criteria for assessing constitutional validity of punishments imposed by sentencing statutes. The primary principle is that a punishment must not be so severe as to be degrading to the dignity of human beings. A second guiding principle is that the State must not arbitrarily inflict a severe punishment. Thirdly, inherent in the clause is that a punishment must not be unacceptable to contemporary society. Finally, the fourth principle implicit in the clause is that a punishment must not be excessive.

Whether a punishment is excessive is determined by a two-pronged test. A punishment may be so severe as to be excessive because it is disproportionate to the crime (*O'Neil* v. *Vermont,* 144 U. S. 323, 339–340) or because the punishment serves no penal purpose more effectively than a less severe punishment (*Furman* v. *Georgia, supra* [BRENNAN, J., concurring, p.

280, MARSHALL, J., concurring, p. 331]; see, e.g., *Wilkerson* v. *Utah,* 99 U. S. 130, 134; *Weems* v. *United States,* 217 U. S. 349, 381; *Louisiana ex rel. Francis* v. *Resweber,* 329 U. S. 459, 464). The "cruel and unusual punishment" clause of the Eighth Amendment immediately follows language that prohibits "excessive" bail and "excessive" fines. As Justice MARSHALL said in *Furman* (p. 332): "the entire thrust of the Eighth Amendment is, in short, against 'that which is excessive'". Thus, it is appropriate to conclude that a punishment may violate the Eighth Amendment as well as section 5 of article I of the New York Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it offends fundamental notions of human dignity and is therefore shocking to the moral sense of the community (see, e.g., *Matter of Lynch,* 8 Cal. 3d 410, *supra; People* v. *Lorentzen,* 387 Mich. 167; *State* v. *Evans,* 73 Idaho 50; *Workman* v. *Commonwealth,* 429 S. W. 2d 374 [Ky.]; and, see, generally, Length of Sentence as Violation of Constitutional Provisions Prohibiting Cruel and Unusual Punishment, Ann. 33 ALR 3d 335; Federal Constitutional Guaranty against Cruel and Unusual Punishment — Supreme Court Cases, 33 L. ed. 2d 932).

Considering these tests, we do not believe that the punishment imposed by these penal statutes is so severe as to be degrading, nor arbitrarily inflicted, unacceptable to contemporary society, disproportionate to the crime or failing to serve a penal purpose more effectively than a less severe punishment. In so stating, we do not mean to suggest that these new penal provisions are without troublesome aspects. They are not. Several deserve mention. First and foremost is the failure to distinguish between the person who is diseased (i.e., the addict) from the nonaddict peddler. This law mandates a maximum term of imprisonment for life without regard to whether the particular offender is an addict or a nonaddict. The *mens rea* of the addict-peddler and the nonaddict seller are perhaps the same but their purposes are plainly different. Under this statute they are treated alike for purposes of punishment. The justification for similar treatment is found in the fact that the sale of heroin is a heinous crime, an essentially violent act, per se, which wreaks havoc upon the lives of addicts, their families and its ultimate victim, society. It may be argued that it should be considered a crime as serious as murder because it condemns the addict to a life more horrendous than death. It is these considerations which make it appropriate to treat the sale of heroin as a class A felony regardless of

who commits the crime. It is well-settled law that a legislative distinction will not be set aside if any state of facts reasonably justifies it (*McGowan* v. *Maryland,* 366 U. S. 420).

Further, the lifetime parole aspect is troublesome because once released from prison the defendant is still subject to a perpetual limitation of his liberty. According to the testimony of the State Commissioner of Corrections before the Codes Committee which drafted this statute, however, felons convicted of narcotics crimes had a 50% higher recidivist rate than other felons (Testimony of Commissioner Oswald, Public Hearing, Committee on Codes, Feb. 6, 1973). It has been further established, as former Governor Rockefeller stated, that after allocating over one billion dollars to the problem of drug addiction, "we have achieved very little permanent rehabilitation, and have found no cure" (State of State Message — January 3, 1973, reported in N. Y. L. J., Jan. 4, 1973, p. 4, col. 3). Faced with such a high recidivist rate and no known cure we cannot say that the Legislature acted without reasonable justification in providing for permanent supervision as support for the released offender and as necessary protection for the public.

### CONCLUSION

Despite the myriad reports and studies emanating from governmental and private sources, it is still too soon to know for certain whether this statute will have the desired effect of helping in the solution of the drug problem in New York. More time needs to pass before that answer emerges. Subject to the test of such time, however, we conclude, as did the Second Department (*People* v. *Broadie,* 45 A D 2d 649) and the Third Department (*People* v. *Venable,* 46 A D 2d 73, decided Nov. 27, 1974), that chapters 276 to 278 of the Laws of 1973 meet the standards by which a statute, challenged as inflicting cruel and unusual punishment, is to be judged and that appellants have failed to prove this law unconstitutional beyond a reasonable doubt.

We have considered the other contentions raised in *McNair* and find them to be without merit.

Therefore, in *Mosely* the judgment insofar as it imposes sentence should be reversed and the matter remitted for resentencing; and the judgment in *McNair* should be affirmed.

MARSH, P. J., WITMER, SIMONS and GOLDMAN, JJ., concur.

Judgment in *People* v. *McNair* unanimously affirmed.

Judgment in *People* v. *Mosely* insofar as it imposes sentence unanimously reversed on the law and matter remitted to Monroe County Court for resentencing in accordance with opinion by CARDAMONE, J.