317 So.2d 172 (1975)
STATE of Louisiana
v.
Richard STETSON.
No. 55961.
Supreme Court of Louisiana.
July 25, 1975.
*173 George P. Vedros, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Keith S. May, Research Attorney, Research and Appeals Div., Gretna, for plaintiff-appellee.
SUMMERS, Justice.
This is an appeal by Richard Stetson from a conviction for distribution of heroin. La.R.S. 40:966(A). He was sentenced to life imprisonment.
In a dual attack upon this prosecution, by motions to quash, Stetson alleges that he was denied due process of law and a fair trial because he was not arrested until seven months after the alleged sale of narcotics; and the mandatory life imprisonment prescribed by statute is cruel and unusual punishment.

I.
The due process contention is based upon the theory that the alleged narcotic sale was made on October 18, 1973, and Stetson was not arrested until May 10, 1974. Formal charges were promptly lodged by the *174 District Attorney on May 21, 1974. This delay in arrest is said to be unusual and unnecessary, and Stetson was thereby hindered in the preparation and assertion of his defense.
Except for very serious crimes such as murder and rape, La.Code Crim.Proc. art. 571, the delay for bringing a criminal prosecution in Louisiana, as in most states, is barred by statute after the end of a definite period. Thus, Article 572 of the Code of Criminal Procedure fixes these time limitations for other than capital crimes:
"No person shall be prosecuted, tried, or punished for an offense not punishable by death unless the prosecution is instituted within the following periods of time after the offense has been committed:
"(1) Six years, for a felony necessarily punishable by imprisonment at hard labor;
"(2) Four years, for a felony not necessarily punishable by imprisonment at hard labor;
"(3) Two years, for a misdemeanor punishable by a fine or imprisonment or both; or
"(4) Six months, for a misdemeanor punishable only by a fine or forfeiture."
Under this authority, since punishment in the instant case is necessarily by imprisonment at hard labor, the instant prosecution must be instituted within six years "after the offense has been committed." La.R.S. 40:966, subd. B. Once instituted, the prosecution must proceed within established time limitations to assure a speedy trial. U.S.Const. 6th Amend.; La.Const. art. I, ¶¶ 6, 9 (1921); La.Const. art. I, ¶16 (1974); La.Code Crim.Proc. art. 578.
Louisiana law and recent interpretations of the federal constitution recognize that the guarantee of a speedy trial does not become applicable until the defendant in some way becomes an accused, which in the present case was the day of the arrest. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Moore, 300 So.2d 492 (La.1974); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972); La.Code Crim.Proc. art. 578 (Comments). See also Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). No valid claim is made here that there was undue delay in the prosecution after arrest, or that the right to a speedy trial as guaranteed by the National and State Constitutions is involved.
Where there is a claim of prejudice resulting from the passage of time between crime and arrest or charge, other provisions of law operate to guard against possible, as distinguished from actual, prejudice. Statutes of limitation are the primary guarantee against bringing overly stale criminal charges. La.Code Crim. Proc. arts. 571-72. Cf. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The applicable statute here is Article 572 of the Code of Criminal Procedure quoted above, which, insofar as it is pertinent here, prescribes that no prosecution, trial or punishment may be had unless prosecution is instituted within six years after the offense has been committed.
The statute represents a legislative assessment of relative interests of the State and defendant in administering and receiving justice; it is enacted for the repose of society and the protection of those who may have lost their means of defense because of the passage of the prescribed time. The statute furnishes the desirable ingredient of predictability by specifying a limit beyond which there is an irrefutable presumption that a defendant's right to a fair trial would be prejudiced. Its purpose is to limit exposure to criminal prosecution to a fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanction. By this limitation individuals are protected *175 from having to defend themselves against charges when the basic facts may have become obscured by the passage of time. Danger of official punishment because of acts in the far-distant past are minimized. Law enforcement officials are encouraged by such a limitation to promptly investigate suspected criminal activity. United States v. Marion, supra; State v. Theard, 203 La. 1026, 14 So.2d 824 (1943).
The issue that a prosecution was not timely instituted may be raised at any time under this State law, La.Code Crim.Proc. art. 577, and the effect of maintaining that issue is to recognize repose as in civil matters. It amounts to an act of grace by the sovereign surrendering its right to prosecute, or as acts of amnesty declaring that the offender may cease to preserve his proof of innocence after the time limit has passed, or as a recognition by the State that time gradually wears out evidence of innocence. A further social motive justifying the existence of such statutes is that they curb the power of the State to hold over a person's head the threat of prosecution for a longer period of time. Preliminary Statement, Title XVII, Time Limitations, La.Code Crim.Proc.
As the record makes clear, defendant did not testify; and no one was called to testify on his behalf. He asserts in brief, without other support from the record, that no one was called to testify for him because no one could accurately testify to his whereabouts seven months before his arrest. In effect, defendant is asking that prejudice to his defense should be presumed from the seven-month delay despite the statutory regulation of this issue to which reference has been made. This contention is based upon the Due Process Clauses of the Federal and State Constitutions. U.S.Const. 5th Amend.; La.Const. art. I, ¶6. It is contended that these constitutional principles would require dismissal of the indictment on account of the presumption, and the substantial prejudice which necessarily arises from the facts of this case, that defendant's rights to a fair trial were jeopardized.
However, this Court is not warranted in making such a presumption from the bare facts before us in the face of the deliberate and explicit State policy established in Article 572 of the Code of Criminal Procedure regulating this specific situation. The tenuous basis advanced for such a presumption may not properly supersede unequivocal State policy.
Prejudice cannot be presumed merely because the accused has not taken the stand and has called no witnesses to testify on his behalf. The reasons for or against such a decision are so varied and motivated by such diverse considerations that no consistent conclusion may be drawn from this defense decision alone which would not amount to conjecture and speculation. United States v. Mallah, 503 F.2d 971 (2d Cir. 1974).
This is not to say, however, that certain facts and circumstances may not establish actual prejudice because of an inordinate delay in the institution of prosecution. It is not necessary to determine here what those facts are, but when a claim of actual prejudice is asserted it would then be incumbent upon the Court to judge those facts and circumstances in the light of due process and fair trial guarantees. For all authority will recognize that legislative enactments prescribing time limitations for the institution of prosecutions cannot unreasonably implement or in any instance supersede or modify the fair import of constitutional due process.
Actually, prejudice to the defense of a criminal case may result from the shortest and most necessary delay; yet, no one suggests that every delay causing detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the defendant's rights to due process and a fair trial will necessarily involve a deliberate *176 judgment based on the facts and circumstances of each case. It would be unwise at this juncture to attempt to forecast those decisions. United States v. Marion, supra.
In this case, however, the seven-month time interval, without showing more, is insufficient to hold that defendant has been denied the due process of fair trial guarantees of our law.

II.
At the conclusion of the trial, defense counsel filed a motion to quash the bill of information and moved for a new trial. In each he alleged that the mandatory life imprisonment sentence prescribed by the statute under which defendant was convicted and sentenced is cruel and unusual punishment proscribed by both the Federal and State Constitutions. U.S.Const. 8th Amend.; La.Const. Art. I, ¶12 (1921); La.Const. Art. I, ¶20 (1974); La.R.S. 40:966, subd. B.
A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional. La.Code Crim.Proc. art. 878.
The Legislature is vested with the constitutional power to define crimes and fix punishments. State v. Selman, 300 So.2d 467 (La.1974); State v. Crook, 253 La. 961, 221 So.2d 473 (1969). Courts are charged with applying these punishments unless they are found to be unconstitutional. Cruel and unusual punishments are those that are barbarous, extraordinary, or grossly disproportionate to the offense; they are punishments which shock the conscience of civilized man. State v. Selman, supra; State v. Miller, 263 La. 960, 269 So.2d 829 (1972).
In several cases involving punishments for violation of narcotic laws of this State, this Court has upheld the constitutionality of those laws against the contention that the punishments inflicted were cruel and unusual. State v. White, 254 La. 389, 223 So.2d 843 (1969); State v. Glantz, 254 La. 306, 223 So.2d 813 (1969); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Bellam, 225 La. 445, 73 So.2d 311 (1954); State v. Thomas, 224 La. 431, 69 So.2d 738 (1954).
It is well settled that the Eighth Amendment's guarantee against cruel and unusual punishment is made applicable against the States through the due process clause of the Fourteenth Amendment of the United States Constitution. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Moreover, since adoption of the Federal Constitution, similar proscriptions have been written into virtually every state constitution, including our own. (La.Const. Art. I, ¶12 (1921); La.Const. Art. I, ¶20 (1974).
The Cruel and Unusual Clause like other great provisions of the Constitution is not susceptible to precise definition. Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, L.Ed.2d 630 (1958). Recently, the United States Supreme Court was called upon to test the ultimate form of punishment, the taking of human life, against the prohibition of that Clause. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A review of the concurring opinions of the justices in the Furman Case reveals four generalized criteria for assessing the constitutional validity of punishments. The primary principle is that a punishment must not be so severe as to be degrading to the dignity of human beings. In addition, the State must not arbitrarily inflict a severe punishment; the punishment must not be unacceptable to contemporary society; and the punishment must not be excessive. People v. McNair, 46 A.D.2d 476, 363 N.Y.S.2d 151 (1975).
When subjected to this test, Section 966, subd. B of Title 40 of the Revised Statutes is found to be constitutionally valid.
*177 The punishment imposed is not so severe as to be degrading, nor is it arbitrarily inflicted or unacceptable to contemporary society, disproportionate to the crime or failing to serve a penal purpose more effectively than a less severe punishment. And no showing is made to the contrary.
The penalty imposed is not so grossly disproportionate to the crimes charged as to shock the sense of justice. Cf. Castle v. United States, 399 F.2d 642 (5th Cir. 1968); Houle v. United States, 463 F.2d 1137 (5th Cir. 1972). Narcotic traffic is but one phase of a large scale, well entrenched criminal activity that springs from human greed and preys on man's weaknessone that turns buyers into sellers, makes addicts out of newborn infants and sets addicts to mugging, thievery, prostitution, robbery and murder to support an insatiable appetite. The punishment fits the crime. People v. Gardner, 78 Misc. 2d 744, 359 N.Y.S.2d 196 (1974).
For the reasons assigned, the conviction and sentence are affirmed.