DOUCET, Judge.
Plaintiff alleges the defendant-sheriff’s indifference to her medical needs, while she was incarcerated, resulted in the spontaneous abortion of her child. From an adverse ruling, she appeals.
On Saturday, October 16, 1976, Eva Louise Toups Williams, plaintiff-appellant, was arrested by officers of the Vermilion Parish Sheriff’s Department on charges of theft and was subsequently booked and incarcerated in the parish jail. At the time of her arrest she was approximately three *325 months pregnant. Prior to her arrest, October 4,1976, she had been hospitalized due to threatened loss of her child, however she was released shortly thereafter upon the condition she stay rested and return to her physician for frequent check-ups, one of which was scheduled for October 18, 1976.
Upon being booked plaintiff claims to have informed the deputy on duty, Gaylon Duhon, of her condition, however Duhon denied that she ever made a statement to this effect. She was then taken to a cell which she shared with another female prisoner who was soon to be released. According to the plaintiff the jail was cold and she was not issued a blanket.
The following day, October 17, 1976, plaintiff began experiencing abdominal pains which increased in severity throughout the next day. On the evening of October 18, 1976, Ms. Williams, alone in her cell, miscarried the child. When she cried out that she was having the child, the trustee, Melvin P. Plowden, related the message to the jailer on duty, Edward Mire, who in turn had an ambulance summoned, then went to Ms. Williams’ side to comfort her. Upon being taken to Abbeville General Hospital she was diagnosed as having spontaneously aborted the fetus.
Thereafter plaintiff instituted this action against the Vermilion Parish Sheriff, Euda Delcambre, individually and as Sheriff, jailer Edward Mire, the Vermilion Parish Police Jury *, and defendants’ insurer, alleging that defendants’ failure to provide a cell suited for human habitation and denial of medical treatment resulted in the loss of her child by miscarriage. Additionally, plaintiff claimed she was not promptly released after charges had been dropped. The defendants denied that they had ever been informed of plaintiff’s pregnancy or the threats thereto. After trial on the merits, the trial judge granted judgment in favor of defendants and dismissed plaintiff’s demands.
On appeal, plaintiff assigns as error the trial court’s failure to recognize her cause of action under 42 U.S.C. § 1983, and in not awarding damages for violation of her civil rights under the Eighth Amendment to the United States Constitution and the 1974 Louisiana Constitution, Article I § 20.
Appellant contends that defendants’ denial of medical care constituted cruel and unusual punishment under the Eighth Amendment. In support thereof, she cites Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), rehearing denied 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1976) wherein it was stated:
“The amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency.... ’ (citation omitted) against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with ‘the evolving standards of decency which mark the progress of a maturing society’, (citation omitted) or which ‘involve the unnecessary and wanton infliction of pain,’ (citation omitted)
These elementary principles establish the government’s obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical ‘torture or a lingering death,’ (citation omitted) the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.’ (citation omitted) The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that ‘it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.’
*326 We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the ‘unnecessary and wanton infliction of pain,’ (citations omitted) proscribed by the Eighth Amendment.”
The Eighth Amendment, and United States Supreme Court interpretations thereof, are, of course, applicable to the states. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); State v. Stetson, 317 So.2d 172 (La.1975).
That plaintiff has stated a valid claim is beyond doubt. Deliberate indifference to serious medical needs of a prisoner, constitutes cruel and unusual punishment in violation of the Eighth Amendment and serves no penological purpose whatsoever. And it is undisputed that plaintiff suffered considerable pain, suffering, torment and agony in losing her child. Having elected to carry the child through term she was entitled to medical assistance in furtherance of her maternal goal. What is doubtful, however, is whether plaintiff established her claim.
The standard of appellate review in cases such as the present was set forth in Canter v. Koehring, 283 So.2d 716 (La.1973) as follows:
“When there is evidence before the trier of fact which, upon'its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
One of the few disinterested witnesses to testify was the trustee on duty, Melvin P. Plowden, who testified that plaintiff had told him of her pregnancy and doctor’s appointment, and although not requested, he related same to the jailer, Mire.
The record shows that the Sheriff had delegated his responsibilities to Plow-den. The agent’s breach thereof would render the Sheriff liable.. Slack v. Bishop, 444 F.Supp. 1161 (E.D.La.1973). However, the record before us is inconclusive as to any breach on the part of trustee Plowden, whose testimony was contradicted by that of jailer Mire. Mire testified that he was unaware of plaintiff’s condition until immediately prior to the miscarriage whereupon Plowden related plaintiff’s statement that she was losing her baby.
The record reveals testimony of numerous witnesses who stated they had not been informed of plaintiff’s pregnancy. John Barras, a deputy on duty on October 18, 1976 testified that plaintiff never called out to him for help or told him she was pregnant, nor did she request a doctor. Even Ms. Williams’ friend, Mr. Eddie Levine, who visited her at jail stated he was not aware of her pregnancy until she allegedly informed the jailer of same while being booked. The Sheriff testified that it was their policy not to incarcerate a pregnant woman, however plaintiff did not inform him of her condition, and due to her obesity, it was not apparent. Furthermore, none of Ms. Williams’ visitors requested assistance on her behalf. Indeed the record shows that she asked Mr. Levine to bring cigarettes — not blankets or medical aid.
In light of all of the evidence, we cannot say the result reached by the trial court was clearly wrong; therefore, consistent with Cantor, we affirm.
Admittedly, a different result might obtain had plaintiff’s incarceration, and therefore her liberty to obtain medical treatment, been unlawful, however there is no evidence that such was the case.
*327 For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
AFFIRMED.

The police Jury was subsequently released.