# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**BY HUGHES, J.**:

2016-KK-0687    STATE OF LOUISIANA v. CHANNING R. GRAY (Parish of Bienville)

Accordingly, we vacate the judgment of appellate court, granting the defendant's motion to quash and dismissing the bill of information charging the defendant with obstruction of justice, and reinstate the trial court judgment, denying the defendant's motion to quash. APPELLATE COURT JUDGMENT VACATED; DISTRICT COURT JUDGMENT REINSTATED.

SUPREME COURT OF LOUISIANA

NO. 2016-KK-0687

STATE OF LOUISIANA

VERSUS

CHANNING R. GRAY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF BIENVILLE

**HUGHES, J.**[*]

We are called upon to determine, in this case, whether La. C.Cr.P. art. 576 may be applied to render timely the institution of a prosecution against the defendant for obstruction of justice, following the dismissal of a prosecution for murder. The trial court denied the defendant's motion to quash the bill of information charging him with obstruction of justice; however, the appellate court granted the defendant's writ application, granted the defendant's motion to quash, and dismissed the bill of information. The appellate court concluded that the charge of obstruction of justice was not "based on the same facts" as the murder prosecution, contrary to the requirements of La. C.Cr.P. art. 576, and therefore was untimely filed. For the following reasons, we vacate the judgment of the appellate court and reinstate the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

Derroceus Abney was murdered on or about February 10, 2007. His body was found on or about February 23, 2007 hidden in an inoperable freezer located in the yard of a Bienville Parish residence. Investigators determined that Mr.

---

[*]Judge James T. Genovese, assigned as Justice Ad Hoc, sitting for Knoll, J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

Abney's body had been moved to the freezer immediately after his murder. Blood found on the freezer door was discovered to have been that of the victim, though a fingerprint in the blood was not that of the victim. Investigators deduced that, since the victim's blood on the exterior of the freezer would have dried in five to fifteen minutes, the unknown person who left his fingerprint in the victim's blood, before it dried, was likely involved in the victim's murder and the concealment of the victim's body.

Some six years later, the defendant's fingerprints were entered into a national database, and the fingerprint found on the freezer in which Mr. Abney's body was hidden was determined to be that of the defendant. The defendant was arrested on or about June 4, 2013.

A grand jury indicted the defendant with the first degree murder of Derroceus Abney on July 15, 2013, and the indictment was filed with the court on July 16, 2013. The indictment was later amended, on November 5, 2013, to reduce the charge to second degree murder. However, during the course of the trial court proceedings and prior to the 2015 trial date, it was discovered that crucial witnesses and evidence in the case could not be produced (including the freezer). As a result, on June 2, 2015, the State concurrently dismissed the murder prosecution and filed a bill of information charging the defendant with obstruction of justice, a violation of La. R.S. 14:130.1(A), alleging that the defendant "did tamper with evidence by intentionally distorting the results of a criminal investigation by causing or inducing the alteration, destruction, mutilation or concealment of any object with the specific intent to impair the object's integrity or availability for use in any criminal proceeding."

On June 18, 2015, the defendant filed a motion to quash the June 2, 2015 bill of information, contending the State failed to institute prosecution for obstruction of justice within six years, as required by La. C.Cr.P. art. 572(A) ("Except as

2

provided in Articles 571 and 571.1, no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed: ...Six years, for a felony necessarily punishable by imprisonment at hard labor...."). In opposition, since the obstruction of justice prosecution was brought within the six-month time period allowed by La. C.Cr.P. art. 576, though outside the period provided for in La. C.Cr.P. art. 572, the State contended that the obstruction of justice prosecution was timely prosecuted pursuant to La. C.Cr.P. art. 576 ("When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense *based on the same facts* may be instituted within the time established by this Chapter or *within six months from the date of dismissal*, whichever is longer....") (emphasis added).

Following a July 13, 2015 hearing, the trial court found that the murder charge and the obstruction of justice charge were based on the same facts, as required by La. C.Cr.P. art. 576, and denied the motion to quash. The appellate court subsequently granted the defendant's writ application, granted the defendant's motion to quash, and dismissed the bill of information charging the defendant with obstruction of justice. **State v. Gray**, 50,456 (La. App. 2 Cir. 2/24/16), 190 So.3d 730. On application of the State, this court granted certiorari. **State v. Gray**, 16-0687 (La. 9/6/16), 205 So.3d 911.

### LAW AND ANALYSIS

Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court

3

is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. **State v. Love**, 00-3347, pp. 9-10 (La. 5/23/03), 847 So.2d 1198, 1206. However, the trial court's legal findings are subject to a de novo standard of review. **State v. Hamdan**, 12-1986, p. 6 (La. 3/19/13), 112 So.3d 812, 816; **State v. Smith**, 99-0606, p. 3 (La. 7/6/00), 766 So.2d 501, 504. This case presents both a question of law as to the proper interpretation of the meaning of the La. C.Cr.P. art. 576 phrase "based on the same facts" and a question as to the propriety of the trial court's application of that provision to the facts and circumstances of the instant case.

This prosecution was first instituted by an indictment of the Bienville Parish Grand Jury, charging the defendant with first degree murder, in violation of La. R.S. 14:30, which upon conviction carries a sentence of death or life imprisonment. Because "[t]here is no time limitation upon the institution of prosecution for any crime for which the punishment may be death or life imprisonment," pursuant to La. C.Cr.P. art. 571, the institution of the prosecution for first degree murder was not subject to a time limitation and was timely filed.

Further, "[t]he district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court...." La. C.Cr.P. art. 691. Dismissal by the district attorney of an indictment, or of a count of an indictment, discharges that particular indictment or count; the dismissal is not a bar to a subsequent prosecution unless a dismissal is entered without the defendant's consent, after the first witness is sworn at the trial on the merits, or a dismissal is entered after a city court conviction has been appealed to the district court for a trial de novo. La. C.Cr.P. art. 693.

In this case, the State amended the first-degree murder charge against the defendant to second-degree murder and, thereafter, concurrently dismissed the

4

second-degree murder charge and filed a new bill of information to charge the defendant with obstruction of justice, based on the defendant's participation in concealing the murder victim's body. In so doing, the State relied on the application of La. C.Cr.P. art. 576 to provide for the timeliness of the new prosecution.[1]

In granting the defendant's motion to quash the bill of information, charging the defendant with obstruction of justice, the appellate court reasoned:

> It is ... undisputed that the offense of obstruction of justice/tampering with evidence arose because of the murder. However, obstruction of justice is a separate and distinct offense, with different elements, from second degree murder. While the elements of the offense are not the controlling inquiry, additional facts (different from second degree murder) must be proven to convict the defendant of obstruction of justice/tampering with evidence. See **State v. Powers**, supra.
>
> Additionally, as in **State v. Powers**, supra, the offense of second degree murder (the offense charged in the amended bill of indictment) had been completed when the facts giving rise to the obstruction charge arose. The testimony presented at the hearing established that the victim had been killed before his body was placed in the freezer. Therefore, the facts supporting the obstruction charge - *the alleged removal of the freezer to hide or tamper with the fingerprint* - necessarily occurred after the murder was committed and would require additional physical and testimonial evidence to prove. Under the reasoning set forth in **State v. Powers**, supra, the offense of obstruction of justice is not based on the same facts as the offense of second degree murder. Therefore, under Article 576, a new prosecution cannot be instituted. Accordingly, we find that the trial court erred in denying the defendant's motion to quash.

---

[1] Article 576 provides:

> When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense *based on the same facts* may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.
>
> A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.

(Emphasis added.)

**State v. Gray**, 50,456 at pp. 9-10, 190 So.3d at 735-36 (footnotes omitted; emphasis added).

The lone dissent to the **State v. Gray** decision reasoned, conversely, as follows:

> The majority reasons that the "removal of the freezer to hide or tamper with the fingerprint" was unrelated in time and a different offense. In this case, a killing occurred and the body was moved from the scene into an abandoned and inoperable freezer. The effort to dispose of the body was unsuccessful as the freezer was found. The body and a fingerprint in the victim's blood w[ere] recovered from the freezer. The fingerprint was evidence to connect someone to the murder. The investigation stalled as law enforcement had no match to the print. The fingerprint was not tampered with. Nor was the freezer removed - it apparently was lost.
>
> * * *
>
> The obstruction of justice offense was based upon and occurred simultaneously with the murder. The obstruction was the attempt to dispose of the body. I would distinguish the case relied on by the majority, **State v. Powers**, and would affirm the trial court.

**State v. Gray**, 50,456 at pp. 1-2, 190 So.3d at 736-37 (dissent) (emphasis added).

The appellate court dissent obviously concluded that the obstruction of justice charge arose out of the moving and hiding of the body of the murder victim, rather than the "the alleged removal of the freezer to hide or tamper with the fingerprint" as stated by the majority opinion, and that the bloody fingerprint was germane to both the murder charge and the obstruction of justice charge, as potentially connecting the defendant with either crime.[2]

Before this court, the parties dispute whether the obstruction of justice charge against the defendant is "based on the same facts" as the prior murder charge. The requirement that a subsequent prosecution under La. C.Cr.P. art. 576

---

[2] In brief to this court, the State maintained: "[T]here has never been an allegation on behalf of the State that the Defendant moved the freezer in order to hide or tamper with the fingerprint evidence." Instead, the State argues that the defendant's fingerprint in the victim's blood "tends to show both the Defendant's involvement in the murder of Mr. Abney and the Defendant's obstruction of justice by moving the body from the place where the murder of Mr. Abney occurred." We note that, in brief to the appellate court, the State argued, consistently, that the obstruction of justice charge was "based on the same facts as the original indictment; i.e., the murder of Mr. Abney, the body being moved to the freezer and the defendant's fingerprint in Mr. Abney's blood on the freezer."

be "based on the same facts" as the previously-dismissed charge is discussed in 1966 Official Revision Comment (a) to Article 576 as follows:

> The requirement that the second charge must be based on the same facts as the first, is of course manifestly essential but can lead to many difficult problems of interpretation. For example, any given set of facts can be the basis of a series of different charges. Thus, if the first charge relied upon to interrupt prescription was burglary, could the second charge, after a dismissal of the first, be theft of property taken as a part of the burglary, or vice versa? Both are based on some of the same facts but not all of them. The only case found on the subject is **State v. Murray**, 222 La. 950, 64 So.2d 230 (1953), in which a delivery boy was charged with theft from his employer of $63.89 on August 20, 1951, this being made of four different items. In November, 1952, this information was nolle prosequied and a new information filed charging theft from the same employer of $47.94 on August 20 and 21, 1951. The difference in amount was due to the fact that proof of one of the items of the theft had been lost and hence it was omitted from the second charge. The court held that both charges were "based on the same facts" and that the second charge was not prescribed. The case suggests, although the point is not discussed, that if the second charge is based on some of the facts of the first charge, it need not be based on all of them. However, since in both charges the offense was the same (theft) and was against the same victim, the case must probably be restricted to that situation. It seems clear, however, that if a second charge involves additional facts, then it can not be said to be based on the same facts and the first charge does not interrupt prescription.

Little guidance exists in the jurisprudence as to the meaning of the La. C.Cr.P. art. 576 phrase "based on the same facts." The only case previously before this court, raising this issue with respect to Article 576, was, as indicated in the above-quoted comment, **State v. Murray**, 222 La. 950, 64 So.2d 230 (1953). In **State v. Murray**, 64 So.2d at 231, the factual scenario out of which the original and amended charges arose was set forth as follows:

> The evidence produced by the State for the purpose of negativing prescription is uncontradicted. It discloses that appellee was employed by Mr. Peter Crifasi, proprietor of the 'One Stop Market' in Baton Rouge, as a delivery boy. On August 20th and 21st, 1951, he was instructed to make four deliveries of merchandise for which he was to receive cash approximating $63.89. His employer made out three invoices for each delivery to be made, the original white copy, which was to be given to the customer at the time of delivery, a yellow copy, which was to be returned by appellee with the cash payment and a pink copy, which was retained by the store. Appellee allegedly was paid for each of the four deliveries of

merchandise and appropriated the cash received to his own use. In order to conceal his peculation, he allegedly stole and destroyed the pink copies of the invoices which were kept in his employer's place of business. The four customers to whom appellee made deliveries were Edward Orange Bowl, Humpty Dumpty, Toddle House and Italian Gardens.

Based on these allegations of fact, the prosecution in **State v. Murray** filed a bill of information charging the defendant with "theft of $63.89 from Peter Crifasi on or about August 20th, 1951," which charge was thereafter dismissed and a new bill of information was filed charging the defendant with "theft of $47.94 from Crifasi on or about August 20th and 21st, 1951." **State v. Murray**, 64 So.2d at 230.

The reason for dismissing the first bill of information and filing a second bill of information on a lesser charge was explained in **State v. Murray** as follows:

When the case was being prepared for trial under the original information charging theft of $63.89, it was discovered that one of the original white invoices - that delivered to Italian Gardens - had been *lost or misplaced*. Because of this, the district attorney elected to nolle prosequi the information and recharge appellee, alleging a theft of $47.94, which is the amount allegedly received by him on August 20th and 21st, 1951 from Edward Orange Bowl, Humpty Dumpty and Toddle House.

**State v. Murray**, 64 So.2d at 231 (emphasis added).

The **Murray** defense asserted that the second bill of information was not based on the same facts as the first because the amount allegedly stolen was reduced from $63.89 to $47.94, the date of the crime was changed from August 20, 1951 to August 20 and 21, 1951, and the second bill of information excluded the alleged theft of the funds received from Italian Gardens. **State v. Murray**, 64 So.2d at 231. Notwithstanding, the **State v. Murray** court held, "We think it clear that the second bill of information is founded on the ***identical act*** charged in the first. There was but one theft, i.e., that of the money collected by appellee for his employer from the four customers. The only changes that have been made are in the amount of the theft and the dates on which it occurred but the facts upon which

8

the theft is based are the same." **State v. Murray**, 64 So.2d at 232 (emphasis added).

In **State v. Murray**, the facts underlying the original theft prosecution against the defendant were not restricted to the one moment when the defendant absconded with the funds. In discussing the facts forming the basis of the original theft prosecution, the **State v. Murray** decision also included the facts related to the defendant's employment, such as: the defendant had been entrusted with the tasks of delivering his employer's goods to customers and collecting payment for the goods; the employer's practice of utilizing triplicate invoices for each customer; and how the defendant attempted to conceal his theft of the payments by stealing and destroying his employer's copy of the invoices for the transactions at issue. See **State v. Murray**, 64 So.2d at 231 (quoted hereinabove).

Further, although the facts and criminal charges involved in **State v. Murray** are different from those at issue in the instant case, the overarching pattern of events is virtually identical: the defendant committed a crime, which he attempted to conceal through further actions; in the ensuing prosecution, a bill of information was filed, but later dismissed when crucial evidence was lost; and a second bill of information was filed charging the defendant with a lesser offense based on the same facts.

In the instant case, the salient facts are that Derroceus Abney was murdered, his body was concealed in an unused freezer, and an impression of the defendant's fingerprint was left in the victim's blood on the freezer door. All of these facts would have been relevant to either the prosecution for murder or the prosecution for obstruction of justice. With respect to the murder, evidence of concealment and attempt to avoid apprehension is relevant since it indicates consciousness of guilt, and therefore is one of the circumstances from which a jury may infer guilt. See **State in Interest of T.E.**, 12-0517, p. 6 (La. 6/29/12), 91 So.3d 292, 295 (per

curiam); **State v. Davies**, 350 So.2d 586, 588 (La. 1977). With respect to obstruction of justice, an element of the crime is that the defendant has "knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding." See La. R.S. 14:130.1(A). Thus, the obstruction of justice charge arises out of the murder.[3]

We reject the defendant's assertion that only the facts set forth in the original bill of information may form the basis of a subsequent prosecution, for purposes of La. C.Cr.P. art. 576's requirements that the new prosecution be "for the same offense or for a lesser offense based on the same facts." An indictment[4] is only required to set forth *essential facts*, pursuant to La. C.Cr.P. art. 464 ("The indictment shall be a plain, concise, and definite written statement of the ***essential facts*** constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated....") (emphasis added).[5] See La. C.Cr.P. art. 462 and 463 ("...The

---

[3] During the July 13, 2015 hearing on the motion to quash, Bienville Parish Sheriff's Department ("BPSD") Deputy Chris Davis testified that the BPSD investigation into Mr. Abney's murder revealed that: Mr. Abney's death was caused by two bullet wounds to his forehead; the freezer where Mr. Abney's body was concealed was found leaning against a storage building with the door toward the wall of the building; the bloody fingerprint, later determined to be that of the defendant, was found on the outside of the freezer; the fingerprint showed a downward motion on the freezer door, close to the handle; the configuration of the bloody marks on the freezer door led the BPSD to conclude "the door was open, handprint was on the door and it was pushed down ... in a closing motion"; and it would have taken between five to fifteen minutes for Mr. Abney's blood to have dried on the outside of the freezer, placing the defendant on the scene no later than that five to fifteen minute interval.

[4] "In this Title [XIII. Indictment and Information] the terms enumerated shall have the designated meanings: ...'Indictment' includes affidavit and information, unless it is the clear intent to restrict that word to the finding of a grand jury." La. C.Cr.P. art. 461.

[5] See also La. C.Cr.P. art. 465 providing, in pertinent part:

> A. The following forms of charging offenses may be used, but any other forms authorized by this title may also be used:
> * * *
> 31. First Degree Murder--A.B. committed first degree murder of C.D.
> 32. Second Degree Murder--A.B. committed second degree murder of C.D.
> * * *
> B. The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, *may* also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the

particulars of the offense *may* be added with a view to avoiding the necessity for a bill of particulars....") (emphasis added). See also **State v. Griffin**, 495 So.2d 1306, 1311 (La. 1986); **State v. Gainey**, 376 So.2d 1240, 1311 (La. 1979) (holding that the constitutional requirement of informing the defendant of the nature and cause of the charge against him is not to be read so restrictively as to mean he must be so informed by the indictment; the more reasonable rule is that when the indictment charging the defendant fails to set forth the detailed facts constituting the offense charged, his proper remedy is not a motion to quash, but a request for a bill of particulars in accordance with La. C.Cr.P. art. 484).

Article 576 states only that the new prosecution be "based on the same facts" as the dismissed prosecution; Article 576 does not require that the new prosecution must be based on the same *essential* facts as the dismissed prosecution. Where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. **State v. Shaw**, 06-2467, p. 15 (La. 11/27/07), 969 So.2d 1233, 1242 (citing La. R.S. 1:4; **State v. Freeman**, 411 So.2d 1068, 1073 (La. 1982)).

We find no ambiguity in the Article 576 phrase "based on the same facts." The absence of language qualifying or restricting the term "facts" clearly indicates that "facts" is used in its broadest sense. Support for this conclusion can be found in **State v. Powers**, 344 So.2d 1049, 1052 (La. 1977), which reviewed a complementary codal provision, La. C.Cr.P. art. 581,[6] containing a phrase identical

---

sufficiency of the specific indictment form authorized by this article. [Emphasis added.]

[6] Article 581 provides:

Upon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment. This right of dismissal is waived unless the motion to quash is made prior to trial.

If the indictment is dismissed under this article, there shall be no further prosecution against the defendant for the same or a lesser offense *based on the same facts*. [Emphasis added.]

to that in Article 576, "based on the same facts."  In reviewing Article 581's language, mandating that, after the time limit for holding a trial in a criminal prosecution has expired, the indictment must be dismissed and any further prosecution against the defendant for the same or a lesser offense "based on the same facts" is prohibited, the **State v. Powers** court recognized that "the codal language envisions a rather broad interpretation."  **State v. Powers**, 344 So.2d at 1052.

In **State v. Powers** the defendant was charged with murder, aggravated burglary, and conspiracy to commit aggravated burglary.  There was no question that the murder charge had been timely instituted; however, the burglary charges were instituted after the dismissal of prior charges of aggravated robbery and conspiracy to commit aggravated robbery, on the defendant's motion to quash.  The robbery charges had been previously dismissed by the trial court because no trial was timely commenced within two years of the institution of the prosecution, pursuant to La. C.Cr.P. arts. 578(A)(2) and 581.[7]  The defendant contended, regarding the subsequently-filed burglary charges, that the new charges were "based on the same facts" as the prior robbery charges,[8] and thus further prosecution on the new burglary charges was prohibited by Article 581.  The trial

The limitations established in the chapter referenced in Article 581 (Chapter 2. Limitations Upon Trial) are provided in Article 578 ("Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable: (1) In capital cases after three years from the date of institution of the prosecution; (2) In other felony cases after two years from the date of institution of the prosecution; and (3) In misdemeanor cases after one year from the date of institution of the prosecution... "), as modified by the provisions relative to interruption and/or suspension and/or the effect given to a new trial, as set forth in Articles 579, 580, 582, and 583.

[7] However, the murder prosecution was maintained because it was subject to a time limit of three years for commencement of trial after institution of prosecution, under La. C.Cr.P. art. 578(A)(1), and three years had not yet elapsed.

[8] The **State v. Powers** court conceded that the murder, the robbery, and the burglary charges all arose out of "a single incident," but concluded that the burglary charges arose from distinct facts from the robbery and murder charges.  These crimes occurred in May of 1973, when "a group of people" illegally entered the home of Baton Rouge attorney, H. Alva Brumfield, to commit a burglary.  Mr. Brumfield was not home when the burglary occurred, but before the perpetrators left the premises Mr. Brumfield returned, and the perpetrators then committed armed robbery of Mr. Brumfield and murdered him.

court denied the defendant's motion to quash the burglary charges on that basis, and the matter was subsequently reviewed by this court. In upholding the trial court ruling, this court reasoned that the aggravated burglary of the empty residence had taken place, and every element of the crime was complete, before Mr. Brumfield returned home; and that it was only upon Mr. Brumfield's return that every element of the offense of armed robbery took place. Therefore, the **State v. Powers** court concluded that the robbery charges and the burglary charges were two separate crimes and were not "based on the same facts." **State v. Powers**, 344 So.2d at 1052.

In **State v. Powers**, 344 So.2d at 1052 n.6, this court determined that "the same facts" meant "the facts that the state hoped to prove," since, as a procedural matter, when such a pre-trial motion to quash is under consideration, no facts have yet been *proven* against the defendant. Notably, there was no indication in **State v. Powers** that any of the facts related to the previously-dismissed armed robbery charges were necessary to prove the subsequent burglary charges. In contrast, in the instant case, the prosecution had hoped, with respect to the previously-dismissed murder charge, to prove that the defendant participated in the murder of the victim by means of the defendant's fingerprint in the victim's blood, as evidencing the defendant's guilty knowledge associated with his participation in the concealment of the victim's corpse in an attempt to avoid apprehension by law enforcement authorities (i.e., obstruction of justice); and, with respect to the obstruction of justice charge, the prosecution hoped to prove all of the facts they had hoped to prove in connection with the murder prosecution, except for the defendant's participation in the murder. Because all of the facts of the obstruction charge were subsumed within the facts of the murder charge, including the occurrence of the murder, though excepting the identity of the murderer, we conclude that the obstruction of justice charge was based on the same facts as the

13

murder charge. This holding is in accordance with **State v. Murray** and La. C.Cr.P. art 576, Official Revision Comment (a), indicating that if the second charge is based on some of the facts of the first charge, it need not be based on all of them.

On this point, we note that the **State v. Powers** decision misquotes the La. C.Cr.P. art 576, Official Revision Comment (a), in stating the following: "The official revision comment to that article [Article 576] indicates that the 'same facts' language ***would prohibit*** a subsequent charge which is based on some of the same facts as the initial charge, even though it is not based on all of them." See **State v. Powers**, 344 So.2d at 1051 (emphasis added). To the contrary, Revision Comment (a) to Article 576 actually states: "The [**State v. Murray**] court held that both charges were "based on the same facts" and that the second charge was not prescribed. The case suggests, although the point is not discussed, that ***if the second charge is based on some of the facts of the first charge, it <u>need</u> <u>not</u> be based on all of them***." (Emphasis added.) Thus, the redactors of Article 576 expressed the view that a second charge *need not* be based on all of the facts of the first charge, as long as it is based on some of the facts of the first charge. In this case, the second charge of obstruction of justice is based on all of the facts of the first charge of murder except the identity of the victim, since in order to prove the defendant was involved in the murder, the State would have had to prove his identity and his guilty knowledge through the fingerprint he left while obstructing justice by concealing the murder victim's corpse.

The defendant in this case further asserts that, as in **State v. Powers**, one of the crimes at issue (there, aggravated burglary; here, murder) was fully complete before actions constituting the other crime (there, armed robbery; here, obstruction of justice) commenced. Nevertheless, "determination of motions to quash in which the district attorney entered a nolle pros and later reinstituted charges should be

14

decided on the basis of the facts and circumstances of the individual case." **State v. Love**, 00-3347 at p. 14, 847 So.2d at 1209.[9] Because we conclude here that the subsequent prosecution is based on the same facts as the previously-dismissed prosecution, whereas the same was not true in **State v. Powers**, we find **State v. Powers** distinguishable from the facts and circumstances of this case.

The instant defendant additionally argues that, because the time limit for institution of prosecution for the crime of obstruction of justice had accrued on February 10, 2013 (six years after the February 10, 2007 murder of Mr. Abney), *before* the prior prosecution for murder had been instituted by the filing of an indictment on July 16, 2013, La. C.Cr.P. art. 576 could not act to extend the time limit for institution of prosecution on the obstruction of justice charge. Notwithstanding, such an argument misconstrues the codal framework established in Title XVII, "Time Limitations," which includes Chapter 1, "Limitations Upon Institution or Prosecution," and Chapter 2, "Limitations Upon Trial," containing the provisions discussed herein. Present in both Chapter 1 and Chapter 2, are articles setting forth the time limitations (articles 571, 571.1, 572, and 578) as well as articles governing the commencement, interruption, suspension, pleading of, and exceptions to the time limits (articles 573-77 and 579-83).[10]

The enactment of such time limitations and concomitant matters "represents a legislative assessment of relative interests of the State and defendant in

---

[9] We note the motion to quash in **State v. Love** was filed after the State dismissed an initial prosecution charging the defendant with possession of cocaine with intent to distribute; the State then filed a new bill of information that charged the defendant with the same crime, within the delay allowed by La. C.Cr.P. art. 576. Therefore, the issue presented in the instant case was not presented in **State v. Love**, since the new prosecution was on the "same offense," not merely "based on the same facts"; nor was there a violation of La. C.Cr.P. art. 578's two-year limit for commencement of trial (the defendant entered a best-interest guilty plea approximately twenty-two months after institution of the prosecution). Rather, the issue in **State v. Love** was whether the defendant's constitutional right to a speedy trial had been violated. In the case now before the court, no allegation of a violation of the constitutional right to a speedy trial has been raised.

[10] See **State v. Adkisson**, 602 So.2d 718, 719 (La. 1992) (expressly referring to Article 573 as a "time limitation exception").

administering and receiving justice." See **State v. Stetson**, 317 So.2d 172, 174 (La. 1975). Maintaining a time limitation plea is to recognize repose as in civil matters; it "amounts to an act of grace by the sovereign surrendering its right to prosecute, or as acts of amnesty declaring that the offender may cease to preserve his proof of innocence after the time limit has passed, or as a recognition by the State that time gradually wears out evidence of innocence." **State v. Stetson**, 317 So.2d at 175. A further social motive justifying the existence of such provisions is that "they curb the power of the State to hold over a person's head the threat of prosecution for a longer period of time." **Id**.

In implementing these principles, the legislature obviously enacted La. C.Cr.P. art. 576 with the recognition that the State has the power, as set forth in La. C.Cr.P. arts. 691 and 693, generally, to dismiss and reinstitute prosecutions, in its discretion, because of circumstances such as that encountered herein and in **State v. Murray** (i.e., the loss or unavailability of crucial evidence), for the purpose of charging a lesser offense or lesser grade of an offense; the limit, inter alia, placed on that power by Article 576, as to a subsequent prosecution for a lesser offense, is that the crime charged be "based on the same facts." The "same facts" restriction serves to give the defendant notice, via the dismissed prosecution, that he continues to be subject to prosecution arising out of the facts forming the basis of the first prosecution.

## CONCLUSION

For the stated reasons, we conclude that the appellate court's ruling in this case was premised on the erroneous assumption that the basis of the obstruction charge was "the alleged removal of the freezer to hide or tamper with the fingerprint" and, therefore, the appellate court decision that, because "the offense of obstruction of justice is not based on the same facts as the offense of second degree murder," "under Article 576, a new prosecution cannot be instituted" was

16

likewise erroneous. <u>See</u> **State v. Gray**, 50,456 at p. 10, 190 So.3d at 736. We further conclude that the trial court correctly interpreted and applied Article 576 to this case, in ruling that from "reading the statute and ... from the testimony presented today ... I think it's the same facts" and in denying the defendant's motion to quash.

## DECREE

Accordingly, we vacate the judgment of appellate court, granting the defendant's motion to quash and dismissing the bill of information charging the defendant with obstruction of justice, and reinstate the trial court judgment, denying the defendant's motion to quash.

**APPELLATE COURT JUDGMENT VACATED; DISTRICT COURT JUDGMENT REINSTATED.**